UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| CRAIG ALAN BRANDT, | |
| Plaintiff, | CIVIL ACTION NO. 3:22-CV-00197 |
| v. | (MEHALCHICK, M.J.) |
| KILILO KIJAKAZI, | |
| Defendant. | |

## MEMORANDUM

Plaintiff Craig Alan Brandt ("Brandt") brings this action under section 205(g) of the Social Security Act, 42 U.S.C. § 405(g), for judicial review of the final decision of the Commissioner of Social Security (the "Commissioner") denying his application for disability insurance benefits under Title XVI. (Doc. 1). The parties have consented to proceed before the undersigned United States Magistrate Judge pursuant to the provisions of 28 U.S.C. § 636(c) and Rule 73 of the Federal Rules of Civil Procedure. (Doc. 6). For the following reasons, the Commissioner's decision shall be **VACATED**, and the case will be **REMANDED** for further consideration.

I. **BACKGROUND AND PROCEDURAL HISTORY**

On September 29, 2020, Brandt filed an application under Title XVI for supplemental security income benefits, alleging an onset date of June 1, 2011. (Doc. 8-2, at 16). The Social Security Administration ("SSA") initially denied his application for benefits on January 11, 2021, and upon reconsideration on March 22, 2021. (Doc. 8-3, at 18-26, 37). On March 26, 2021, Brandt filed a request for a hearing, which Administrative Law Judge ("ALJ") Patrick S. Cutter held on July 7, 2021. (Doc. 8-2, at 36). In a written decision dated August 6, 2021, the ALJ determined that Brandt "has not been under a disability, as defined in the Social

Security Act, since September 29, 2020, the date the application was filed," and therefore not entitled to benefits under Title XVI. (Doc. 8-2, at 17-31). On January 20, 2022, the Appeals Council denied Brandt's request for review. (Doc. 8-2, at 1-6).

On February 9, 2022, Brandt commenced the instant action. (Doc. 1). The Commissioner responded on April 12, 2022, providing the requisite transcripts from Brandt's disability proceedings. (Doc. 7; Doc. 8). The parties then filed their respective briefs, with Brandt raising three bases for reversal or remand. (Doc. 12; Doc. 14).

## II. STANDARDS OF REVIEW

To receive benefits under Title XVI of the Social Security Act, a claimant must demonstrate an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 1382c(a)(3)(A). To satisfy this requirement, a claimant must have a severe physical or mental impairment that makes it impossible to do his or her previous work or any other substantial gainful activity that exists in significant numbers in the national economy. 42 U.S.C. § 1382c(a)(3)(B); 20 C.F.R. § 416.905.1

### A. ADMINISTRATIVE REVIEW

The "Social Security Administration, working through ALJs, decides whether a claimant is disabled by following a now familiar five-step analysis." *Hess v. Comm'r Soc. Sec.*, 931 F.3d 198, 200–01 (3d Cir. 2019). The "burden of proof is on the claimant at all steps except step five, where the burden is on the Commissioner of Social Security." *Hess*, 931 F.3d at 201; *see* 20 C.F.R. § 416.912(a)(1). Thus, if the claimant establishes an inability to do past

2

relevant work at step four, the burden shifts to the Commissioner at step five to show that jobs exist in significant numbers in the national economy that the claimant could perform consistent with his or her residual functional capacity, age, education, and past work experience. 20 C.F.R. § 416.912(a)(1).

    B.    JUDICIAL REVIEW

The Court's review of a determination denying an application for Title II benefits is limited "to considering whether the factual findings are supported by substantial evidence." *Katz v. Comm'r Soc. Sec.*, No. 19-1268, 2019 WL 6998150, at *1 (3d Cir. Dec. 20, 2019). Substantial evidence "does not mean a large or considerable amount of evidence, but rather such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Pierce v. Underwood*, 487 U.S. 552, 565 (1988) (internal quotation marks omitted). The quantum of proof is less than a preponderance of the evidence but more than a mere scintilla. *Richardson v. Perales*, 402 U.S. 389, 401 (1971). A single piece of evidence is not substantial if the ALJ ignores countervailing evidence or fails to resolve a conflict created by such evidence. *Mason v. Shalala*, 994 F.2d 1058, 1064 (3d Cir. 1993). In an adequately developed factual record, substantial evidence may be "something less than the weight of the evidence, and the possibility of drawing two inconsistent conclusions from the evidence does not prevent [the ALJ's decision] from being supported by substantial evidence." *Consolo v. Fed. Maritime Comm'n*, 383 U.S. 607, 620 (1966).

The question before the Court, therefore, is not whether Brandt is disabled, but whether the Commissioner's determination that Brandt is not disabled is supported by substantial evidence and was reached based upon a correct application of the relevant

law. See *Arnold v. Colvin*, No. 3:12-CV-02417, 2014 WL 940205, at *1 (M.D. Pa. Mar. 11, 2014) ("[I]t has been held that an ALJ's errors of law denote a lack of substantial evidence."); *Burton v. Schweiker*, 512 F. Supp. 913, 914 (W.D. Pa. 1981) ("The [Commissioner]'s determination as to the status of a claim requires the correct application of the law to the facts."); *see also Wright v. Sullivan*, 900 F.2d 675, 678 (3d Cir. 1990) (noting that the scope of review on legal matters is plenary). "In determining if the Commissioner's decision is supported by substantial evidence the Court must scrutinize the record as a whole." *Leslie v. Barnhart*, 304 F. Supp. 2d 623, 627 (M.D. Pa. 2003). If "the ALJ's findings of fact . . . are supported by substantial evidence in the record," the Court is bound by those findings. *Knepp v. Apfel*, 204 F.3d 78, 83 (3d Cir. 2000).

### III. THE ALJ'S DECISION

In his written decision, the ALJ determined that Brandt "has not been under a disability, as defined in the Social Security Act, since September 29, 2020, the date the application was filed." (Doc. 8-2, at 31). The ALJ reached this conclusion after proceeding through the five-step sequential analysis provided in 20 C.F.R. § 416.920(a).

#### A. STEP ONE

At step one of the five-step analysis, the ALJ must determine whether the claimant is engaging in substantial gainful activity ("SGA"). 20 C.F.R. § 416.920(a)(4)(i). If a claimant is engaging in SGA, the claimant is not disabled, regardless of age, education, or work experience. 20 C.F.R. § 416.920(b). SGA is defined as work activity requiring significant physical or mental activity and resulting in pay or profit. 20 C.F.R. § 416.972. In making this determination, the ALJ must consider only the earnings of the claimant. 20 C.F.R. § 416.974.

4

Here, the ALJ determined that Brandt "has not engaged in substantial gainful activity since September 29, 2020, the application date," and therefore proceeded to step two of the analysis. (Doc. 8-2, at 18).

> B.   STEP TWO

At step two, the ALJ must determine whether the claimant has a medically determinable impairment—or a combination of impairments—that is severe and meets the 12-month duration requirement. 20 C.F.R. § 416.920(a)(4)(ii). If the ALJ determines that a claimant does not have an impairment or combination of impairments that significantly limits the claimant's "physical or mental ability to do basic work activities," the ALJ will find that the claimant does not have a severe impairment and is therefore not disabled. 20 C.F.R. § 416.920(c). If, however, a claimant establishes a severe impairment or combination of impairments, the ALJ proceeds to consider step three. Here, the ALJ found that Brandt has the following medically determinable impairments: degenerative disc disease of the lumber spine; lower extremity fracture of the right ankle; and obesity. (Doc. 8-2, at 18-19). In addition, the ALJ determined that Brandt has the following non-severe impairments: hypertension, tendonitis of the left elbow, and anxiety. (Doc. 8-2, at 19-20).

> C.   STEP THREE

At step three, the ALJ must determine whether the severe impairment or combination of impairments meets or equals the medical equivalent of an impairment listed in the version of 20 C.F.R. § Pt. 404, Subpt. P, App. 1 that was in effect on the date of the ALJ's decision. 20 C.F.R. §§ 416.920(a)(4)(iii); 416.925; 416.926. The sections in this appendix are commonly referred to as "listings." If the ALJ determines that the claimant's impairment or impairments meet a listing, then the claimant is considered disabled, otherwise, the ALJ must proceed to

5

and analyze the fourth step of the sequential analysis. 20 C.F.R. § 416.920(d). Here, the ALJ determined that none of Brandt's impairments, considered individually or in combination, meet or equal the severity of a listed impairment. (Doc. 8-2, at 20). The ALJ considered the following listings: 1.16 (Lumbar spinal stenosis resulting in compromise of the cauda equina), 1.18 (Abnormality of a major joint(s) in any extremity), and SSR 19-2p (Obesity). (Doc. 8-2, at 21-22).

### D. RESIDUAL FUNCTIONAL CAPACITY

Between steps three and four, the ALJ evaluates the claimant's residual functional capacity ("RFC"), crafted upon consideration of all the evidence presented. At this intermediate step, the ALJ considers "all [the claimant's] symptoms . . . and the extent to which [the claimant's] symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence." 20 C.F.R. § 416.929(a). This involves a two-step inquiry where the ALJ must (1) determine whether an underlying medically determinable mental impairment or impairments could reasonably be expected to produce the claimant's symptoms; and, if so, (2) evaluate the intensity, persistence, and limiting effects of the claimant's symptoms to determine the extent to which they limit the claimant's functional limitations. *See* 20 C.F.R. § 416.929(b)-(c).

After weighing and considering the evidence, the ALJ concluded that Brandt has the RFC "to perform light work as defined in 20 C.F.R. 416.967(b)," subject to the following non-exertional limitations:

> [Brandt] is able to lift and carry 20 pounds occasionally and 10 pounds frequently. [Brandt] can frequently sit or stand, and occasionally walk. [Brandt] can occasionally climb ramps/stairs, balance, stoop, kneel, crouch, or crawl. [Brandt] can frequently use foot controls bilaterally. [Brandt] can tolerate

occasional exposure to work at unprotected heights, contact with moving mechanical parts, operating motor vehicles, temperature extremes, humidity, or wetness. [Brandt] can maintain concentration, persistence or pace for 2-hour segments sufficient to perform routine tasks associated with unskilled work with an SVP 1 or 2.

(Doc. 8-2, at 22).

### E. STEP FOUR

Having assessed a claimant's RFC, at step four the ALJ must determine whether the claimant has the RFC to perform the requirements of their past relevant work. 20 C.F.R. § 416.920(a)(4)(iv). A finding that the claimant can still perform past relevant work requires a determination that the claimant is not disabled. 20 C.F.R. § 416.920(a)(4)(iv). Past relevant work is defined as work the claimant has done within the past 15 years, that was substantial gainful activity, and that lasted long enough for the claimant to learn how to do it. 20 C.F.R. § 416.960(b). If the claimant cannot perform past relevant work or has no past relevant work, then the analysis proceeds to the fifth step. 20 C.F.R. § 416.965.

Here, the ALJ determined that Brandt is unable to perform any past relevant work. (Doc. 8-2, at 30). The ALJ noted past relevant work as a laborer stores and industrial truck operator. (Doc. 8-2, at 29-30). Thus, the ALJ proceeded to step five of the sequential analysis.

### F. STEP FIVE

At step five of the sequential analysis process, an ALJ considers the claimant's age, education, and work experience to see if a claimant can make the adjustment to other work. 20 C.F.R. § 416.920(a)(4)(v). These factors are not considered when evaluating a claimant's ability to perform past relevant work. 20 C.F.R. § 416.960(b)(3). If a claimant has the ability to make an adjustment to other work, they will not be considered disabled. 20 C.F.R. § 416.920(a)(4)(v). Here, the ALJ made the vocational determinations that Brandt was 45 years

old on the date the application was filed, defined as a younger individual age 18-49 by the Regulations. (Doc. 8-2, at 30); *see* 20 C.F.R. § 416.963. The ALJ also noted that Brandt "has at least a high school education" as considered in 20 C.F.R. § 416.964. (Doc. 8-2, at 30). The ALJ determined that upon consideration of these factors, Brandt's RFC, and the testimony of a vocational expert, "there are jobs that exist in significant numbers in the national economy that [Brandt] can perform." (Doc. 8-2, at 30); *see* 20 C.F.R. §§ 416.969; 416.969(a). The ALJ specifically identified occupations of conveyor line bakery worker, small products assembler, and electrical accessories assembler, all with open positions ranging from 4,100 to 35,000 nationally. (Doc. 8-2, at 31). Accordingly, the ALJ determined that Brandt is not disabled and denied his application for benefits. (Doc. 8-2, at 31).

## IV. DISCUSSION

On appeal, Brandt advances three main arguments: (1) "the [ALJ] erred and abused his discretion by failing to consider the limitations in [Brandt]'s [RFC] from those impairments that the [ALJ] considered to be severe, including degenerative disc disease of the lumbar spine, lower extremity fracture of the right ankle, and obesity;" (2) "the [ALJ] erred and abused his discretion in failing to consider the limitations from those conditions that the [ALJ] did not consider to be severe, or even mentioned in his decision, including [Brandt]'s diagnosed and treated bilateral lumbar radiculopathy, issues with poor balance, left elbow tendonitis and chest pain;" and (3) "the [ALJ] erred and abused his discretion in failing to afford proper weight to opinions from Dr. Hartman and Dr. Kneifati, as compared to the opinions from the State Agency Consultants." (Doc. 12, at 1-2). The Commissioner responds that the ALJ "thoroughly reviewed the longitudinal record and found that only [Brandt]'s

lumbar spine degenerative disc disease, right ankle fracture, and obesity qualified as severe impairments." (Doc. 14, at 1). In addition, the Commissioner contends "the ALJ properly included all limitations supported by the record evidence in formulating [Brandt]'s RFC," "the ALJ properly followed the revised regulations in explaining the persuasiveness of each opinion," and "the ALJ adequately explained his rationale for his fact-finding and [Brandt] identifies no error warranting remand." (Doc. 14, at 2).

  A. THE ALJ FAILED TO CONSIDER BRANDT'S NON-SEVERE IMPAIRMENT OF LEFT ELBOW TENDONITIS IN CRAFTING THE RFC.

Brandt argues that the ALJ erred by not finding the following impairments to be severe at step two and include corresponding limitations in the RFC: left elbow tendonitis, bilateral lumbar radiculopathy, issues with poor balance and chest pain. (Doc. 12, at 20-23). Specifically, Brandt avers "the ALJ spent little time considering or discussing these disorders, and offers almost no limitation in particular regarding any of these impairments, despite treatment records evidencing ongoing issues, particularly with regard to [Brandt]'s bilateral lumbar radiculopathy and issues with poor balance." (Doc. 12, at 21-22). In response, the Commissioner argues that Brandt's arguments must fail because "the ALJ fully explained his rationale behind finding [Brandt]'s left elbow tendonitis to be nonsevere and supported his conclusion with substantial evidence." (Doc. 14, at 14). In addition, the Commissioner argues that Brandt's remaining "impairments," including bilateral lumbar radiculopathy, issues with poor balance, and chest pain, are not impairments and even if the ALJ's step two finding was in error, remand would not be required because the ALJ explained his rationale at step two and his conclusions are supported by substantial evidence. (Doc. 14, at 12-16).

In step two of the evaluation process, an ALJ is required to consider whether a claimant's impairments are (1) medically determinable and (2) severe. 20 C.F.R. §§ 416.920(a)(4)(ii), 416.921. An impairment is not considered severe if it does not significantly impact a claimant's physical or mental ability to do basic work activities. *See* 20 C.F.R. § 416.920(c). To establish the requisite level of limitation, a claimant "must support his or her contentions with objective medical evidence." *Sassone v. Comm'r of Soc. Sec.*, 165 F. App'x 954, 958 (3d Cir. 2006). If an ALJ determines that a claimant has a severe condition at step two, then the sequential analysis proceeds to step three. 20 C.F.R. §§ 416.920(a)(4)(ii), 416.921. As such, generally "[a] failure to find a medical condition severe at step two will not render a decision defective if some other medical condition was found severe at step two." *Weitzel v. Colvin*, 967 F. Supp. 2d 1089, 1097 (M.D. Pa. 2013).

"However, finding that an impairment is non-severe at step two does not obviate the need for a separate analysis of how Plaintiff's impairment affects her RFC." *Montanez v. Saul*, No. 3:18-CV-01913, 2019 WL 4439577, at *5 (M.D. Pa. Aug. 19, 2019) (citation omitted); *see also Hess*, 931 F.3d at 202 (explaining that because the functional limitation findings at step two and the RFC assessment at step four "serve distinct purposes and may be expressed in different ways . . . the findings at steps two and three will not necessarily translate to the language used at steps four and five."). Indeed, under the regulations, an ALJ is required to assess all of a claimant's medically determinable impairments – including those that are not severe – in combination when making the subsequent RFC determination. *See* 20 C.F.R. § 416.945(a)(2); *see also Weitzel*, 967 F. Supp. 2d at 1097 ("[A]ll of the medically determinable

impairments both severe and non-severe must be considered at step two and then at step four when setting the residual functional capacity."). As further explained by SSR 96-8p:

> In assessing RFC, the adjudicator must consider limitations and restrictions imposed by all of an individual's impairments, even those that are not "severe." While a "non severe" impairment(s) standing alone may not significantly limit an individual's ability to do basic work activities, it may – when considered with limitations or restrictions due to other impairments – be critical to the outcome of a claim. For example, in combination with limitations imposed by an individual's other impairments, the limitations due to such a "not severe" impairment may prevent an individual from performing past relevant work or may narrow the range of other work that the individual may still be able to do.

SSR 96–8p, 1996 WL 374184 (emphasis added).

Thus, "[e]ven if the ALJ properly determines that a claimant's impairments are non-severe [at step two] . . . a finding of non-severity does not eliminate those impairments from consideration of his or her overall ability to perform past work." *Marsella v. Comm'r of Soc. Sec.*, No. 18-CV-2294, 2019 WL 912141, at *9 (D.N.J. Feb. 25, 2019). Similarly, "where the disability analysis continues to Step [Three], an ALJ's erroneous determination of an impairment's non-severity may constitute harmless error, provided that the impairment continues to be factored in." *Rodriguez v. Berryhill*, No. 17-CV-6884, 2019 WL 1013343, at *9 (D.N.J. Mar. 1, 2019); *see also Rutherford v. Barnhart*, 399 F.3d 546, 552-53 (3d Cir. 2005) (failing to determine the severity of a condition at stage two was harmless because the ALJ properly considered it in the evaluation of the claimant's limitations). However, where it appears that the ALJ's error at step two also influenced the ALJ's RFC analysis, the reviewing court may remand the matter to the Commissioner for further consideration. *McClease v. Comm. of Soc. Sec.*, No. 08-1673, 2009 WL 3497775, at *11 (E.D. Pa. Oct. 28, 2009) (citing *Nosse v. Astrue*, No. 08-cv-1173, 2009 WL 2986612, at *13 (W.D. Pa. Sept. 17, 2009)

("Until the ALJ explains why plaintiffs mental conditions are not severe . . . and provides reasons for rejecting [doctor's] diagnoses and opinions, the court is unable to determine whether the ALJ's RFC determination is supported by substantial evidence.")).

In the opinion, the ALJ considered several of Brandt's alleged impairments at step two and found that his hypertension, tendonitis of the left elbow, and anxiety were medically determinable but non-severe. (Doc. 8-2, at 19). In determining that Brandt's left elbow tendonitis was a non-severe impairment, the ALJ considered Brandt's symptoms and treatment records, including those from Ahmed Kneifata ("Dr. Kneifata"). (Doc. 8-2, at 19). The ALJ reasoned that although tendonitis of the left embow "can interfere with [Brandt]'s use of his left upper extremity, Dr. Kneifati's assessment of [Brandt]'s neurologic functioning, confirmed he had no sensory deficits, and his strength was 5/5 in the upper and lower extremities." (Doc. 8-2, at 19). Thus, the ALJ found that "[b]ased on Dr. Kneifati's examination findings and [Brandt]'s ability to utilize his left upper extremity is not compromised, and in turn, it is clear this impairment does not cause debilitating functional limitations." (Doc. 8-2, at 19). Based on the evidence, the ALJ concluded that Brandt's "left elbow tendonitis [is] well managed with conservative treatment regimens and [is] stable." (Doc. 8-2, at 19).

As pointed out by the Commissioner, the ALJ did not deny Brandt's claim for Title XVI benefits at step two. (Doc. 14, at 15). Nevertheless, irrespective of whether the ALJ erroneously concluded that Brandt's tendonitis of the left elbow to be non-severe was erroneous, the Court is not persuaded that the RFC sufficiently accounted for this impairment. *See Marsella,* 2019 WL 912141, at \*9; *Rodriguez,* 2019 WL 1013343, at \*9. "[T]he

Commissioner's procedures do not permit the ALJ to simpl[y] rely on his finding of non-severity as a substitute for a proper RFC analysis." *Kich v. Colvin*, 218 F. Supp. 3d 342, 355 (M.D. Pa. 2016) (citing *Wells v. Colvin*, 727 F.3d 1061, 1065 (10th Cir. 2013)); *see also Soboleski v. Comm'r of Soc. Sec.*, No. 14-CV-3156, 2015 WL 6175904, at *2 (D.N.J. Oct. 20, 2015) (the ALJ's "simple phrase in the step two analysis does not obviate the need for a separate analysis of how Plaintiff's impairment [of irritable bowel syndrome] affects her RFC.").

Notably, the ALJ indicated that all of Brandt's medically determinable impairments, including those that were not severe, were considered when assessing the RFC; However the ALJ failed to mention Brandt's tendonitis of the left elbow in his RFC determination.[1] (Doc. 8-2, at 22-29). In refusing the severity of Brandt's medically determinable impairments, the ALJ noted that Brandt's tendonitis of the left elbow "do[es] not cause mor[e] than minimal work-related limitations and [is] considered [a] nonsevere impairment[]." (Doc. 8-2, at 19). In the RFC determination, the ALJ considered Dr. Kneifati's opinion and mentioned that "tenderness was noted laterally in the left elbow and at L4-L5, but the neurologic examination

---

[1] On December 31, 2020, Dr. Kneifati conducted a consultative examination. (Doc. 8-7, at 526). Dr. Kneifati noted that Brandt reported his pain level was a 5 out of 10 in intensity and that repetitive use of his left hand/upper extremity exacerbated his pain. (Doc. 8-7, at 526). Dr. Kneifati opined that Brandt was able to work at the light exertional level and that he could occasionally lift and carry up to 20 pounds. (Doc. 8-7, at 530). Dr. Kneifati opined that Brandt could sit for 4 hours in an 8-hour workday, stand 3 hours in an 8-hour workday, and walk 2 hours in an 8-hour workday. (Doc. 8-7, at 531). Dr. Kneifati also opined that Brandt needed a cane to ambulate and that the cane was medically necessary, but indicated that despite use of the cane, Brandt could use his free hand to carry small objects. (Doc. 8-7, at 531). Dr. Kneifati opined that Brandt could continuously engage in manipulative movements, frequently operate foot controls with each foot, could occasionally engage postural movements, and could occasionally be exposed to unprotected heights, moving mechanical parts, operating a motor vehicle, humidity and wetness, and extreme cold and heat. (Doc. 8-7, at 532-34). Lastly, Dr. Kneifati opined that Brandt could continuously be exposed to dust, odors, fumes, pulmonary irritants, and vibrations. (Doc. 8-7, at 534).

detected no sensory deficits and 5/5 strength in the upper and lower extremities." (Doc. 8-2, at 25-28). However, the ALJ never mentions Dr. Kneifati's tendonitis of the left elbow diagnosis or Brandt's testimony that he experiences reduced strength and pain in the left elbow. (Doc. 8-7, at 529). The RFC evaluation did provide for non-exertional limitations that Brandt "is able to lift and carry 20 pounds occasionally and 10 pounds frequently," without any specific reference as to why such limitations were necessary. (Doc. 8-2, at 22-30). Thus, by acknowledging this medically determinable impairment, albeit, in the context of evaluating an exertional limitation, the ALJ apparently discounted Brandt's testimony at step two to then inextricably credit the same upon formulating the RFC assessment.

"Given the passive reference to the conclusions at Step Two and the opinion's inconsistent treatment of [Brandt]'s symptomology, it is unclear whether the ALJ fully considered 'the limitations and restrictions imposed by all of [Philhower's] impairments' in determining the RFC." *Montanez*, 2019 WL 4439577, at *7 (quoting SSR 96-8p); *see* 20 C.F.R. § 416.945(a)(2); *Weitzel*, 967 F. Supp. 2d at 1097; *Soboleski*, 2015 WL 6175904, at *2. As noted above, an ALJ may not rely on a finding of non-severity as a substitute for an RFC analysis. *See Kich*, 218 F.Supp.3d at 355. "Because the ALJ's RFC analysis did not include further discussion of evidence relevant to [Brandt's tendonitis of the left elbow impairments] or an explanation of why [Brandt's] complaints were not credible, it appears that the ALJ's conclusion here was primarily based on [his] conclusion at step two that those symptoms had abated." *McClease*, 2009 WL 3497775, at *11; *see also Rivera v. Comm. of Soc. Sec.*, No. 1:15-cv-05354, 2016 WL 7377094, at *5 (D.N.J. Dec. 19, 2016) (remanding an ALJ's decision

14

partially due to his failure to articulate how the claimant's de Quervain's tenosynovitis and tendonitis affected his RFC determination).

Therefore, regardless of whether Brandt's conditions were erroneously considered non-severe impairments at step two, the Court finds that the RFC assessment is not supported by substantial evidence. Accordingly, the decision of the Commissioner will be vacated and this case will be remanded for further proceedings consistent with this Memorandum.

   B.  THE COURT DECLINES TO ADDRESS BRANDT'S REMAINING ARGUMENTS.

Because the Court has vacated and remanded the decision of the Commissioner for further consideration, including that the ALJ's RFC assessment is not supported by substantial evidence, the Court declines to address Brandt's remaining arguments. "A remand may produce different results on these claims, making discussion of them moot." *Burns v. Colvin*, 156 F. Supp. 3d 579, 598 (M.D. Pa. 2016). The Court's evaluation of Brandt's additional contentions would be futile given that the ALJ's decision regarding Brandt's RFC may yield a different result.

**V. REMEDY**

As a final matter, the Court addresses whether this case should be remanded to the Commissioner for further administrative proceedings or whether reversal and an award of benefits are appropriate. The Court has authority to affirm, modify or reverse the Commissioner's decision "with or without remanding the case for rehearing." 42 U.S.C. § 405(g); *Melkonyan v. Sullivan*, 501 U.S. 89, 100-01 (1991). However, the Third Circuit has advised that benefits should only be awarded where "the administrative record of the case has been fully developed and when substantial evidence in the record as a whole indicates that

the claimant is disabled and entitled to benefits." *Morales v. Apfel*, 225 F.3d 310, 320 (3d Cir. 2000); *see e.g. Fla. Power & Light Co. v. Lorion*, 470 U.S. 729, 744 (1985) ("[T]he proper course, except in rare circumstances, is to remand to the agency for additional investigation or explanation."). Here, the appropriate measure is to remand for further development of the record. Upon remand, the ALJ is instructed to consider and make specific findings as to all relevant probative medical evidence.

## VI. CONCLUSION

Based on the foregoing reasons, the Commissioner's decision to deny Brandt disability benefits is **VACATED**, and the case is **REMANDED** to the Commissioner to fully develop the record, conduct a new administrative hearing, and appropriately evaluate evidence pursuant to sentence four of 42 U.S.C. § 405(g). The Clerk of Court is directed to CLOSE this case.

An appropriate Order follows.

**Dated: March 20, 2023**                              *s/ Karoline Mehalchick*
                                                                                **KAROLINE MEHALCHICK**
                                                                                **Chief United States Magistrate Judge**